**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No. 15-cr-00432-RM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    1. AXEL JAMES WESTMAN,

    Defendant.

## GOVERNMENT'S SENTENCING STATEMENT

The United States of America respectfully submits the following Sentencing Statement. The government requests that the Court impose a sentence of 63 months' imprisonment.

The parties' Plea Agreement contemplates a guidelines range of 63-78 months, based on an offense level of 19 and a criminal history category VI. (Doc. 23). The Presentence Investigation Report ("PSIR") calculates a range of 77-96 months based on an offense level of 21 and a criminal history category VI. (PSIR at Ex. A and ¶ 33). Probation applies an additional two levels because the guns the defendant possessed were stolen. (PSIR at ¶ 25, *see* U.S.S.G. § 2K2.1(b)(4)(A)). Probation requests a variant sentence of 54 months. (PSIR at Ex. A).

Whether the stolen gun enhancement applies is dependent on the unusual facts of this case, discussed below. In the event that the Court imposes this enhancement, the government requests a downward variance of two levels, bringing the defendant's

1

guidelines range back to 63-78 months. The government requests a sentence at the low end of this range.

  *I.*  *Nature and Circumstances of the Offense*

  The instant offense involves the defendant trading cash and heroin to a man named Justin Greenbaum in exchange for two rifles and a silencer.

  How Greenbaum acquired these firearms is a bit more convoluted. Greenbaum, who posed as a bail bondsman named "David Blake," and his girlfriend, Cynthia Chez, defrauded a victim, E.J.P., of E.J.P.'s money and guns. Chez, posing as E.J.P.'s girlfriend, pretended to have three children, even though she had lost custody of her children long before she met E.J.P. Chez defrauded E.J.P. out of over $100,000, much of it based on lies about needing money for her nonexistent children.

  In March 2015, Chez was arrested. "Blake"/Greenbaum contacted E.J.P. and said he needed $1,500 for her bond. E.J.P. wrote Greenbaum a post-dated check for $1,500, but Greenbaum claimed to need collateral since the check was post-dated. E.J.P. therefore gave Greenbaum three firearms to hold as collateral until the check cleared. Greenbaum later pawned most of those firearms at Pawn Bank.

  In April 2015, Chez persuaded E.J.P. to let Chez and her children stay at E.J.P.'s house while he was out of town. When E.J.P. returned home, the guns in his locked closet were missing. He asked Chez where the guns were, and she told him that "Blake" had to remove the guns because Child Protective Services came to inspect the house and found it unsuitable for children due to the items contained in the locked closet. This was a lie, since Chez no longer had custody of her children and Child Protective Services was no longer involved in her case. The firearms that Greenbaum took from the closet

included the three firearms Westman is charged with possessing in the instant offense: the Smith & Wesson Model M&P 15-22 .22 caliber rifle bearing serial number DZS2520, the DSA Inc. Model ZM4 .223 caliber rifle bearing serial number DSF 007493, and the Yankee Hill Machine Model .22LR Mite .22 caliber silencer bearing serial number M22-5987. Greenbaum and Chez have been charged in a separate indictment with, *inter alia*, wire fraud and felon in possession of firearms. *See United States v. Greenbaum*, 16-cr-200-WJM, ECF No. 1 (filed June 9, 2016).

Sometime in spring 2015, Greenbaum traded the firearms to Westman for cash and heroin. In late July 2015, Westman sent E.J.P. Facebook messages asking E.J.P. to contact him. Westman told E.J.P. that E.J.P. was being conned by Chez and Greenbaum. Westman provided his phone number and said it was important that E.J.P. contact him about the situation and to discuss some "missing" items.

E.J.P., however, did not receive the Facebook messages. But in early September 2015, E.J.P. reached out to Westman because he saw Westman's phone number appear repeatedly on Chez's cell phone bill (which E.J.P. was paying). When E.J.P. met up with Westman, Westman returned the three firearms.

Thus, the nature of this offense is unusual. On the one hand, Westman traded heroin and cash for two rifles and a silencer. The silencer is a National Firearms Act item that requires special registration due to the extra danger it presents. Westman held on to these items for at least a few weeks before reaching out to E.J.P. (PSIR ¶ 18). On the other hand, however, Westman did try to return the weapons to their rightful owner. His actions in attempting to return the guns warrant either the low end of the guidelines range (if calculated as 63-78 months), or a downward variance to 63 months.

As to the stolen gun enhancement, the government notes that E.J.P. did not initially believe his guns had been stolen. He was bamboozled by Greenbaum and Chez into thinking that the guns were serving either as collateral for a post-dated check, or that they had to be removed from his closet in order to pass muster with Child Protective Services. Later, however, E.J.P. realized he had been swindled and reported the guns as stolen. And Westman admitted to agents that Justin Greenbaum was coming to him with "boosted" items. (PSIR ¶ 18). On balance, the government agrees with Probation that the additional two-level enhancement for stolen guns should apply, but, given the unusual facts of the case, requests a two-level downward variance if the Court imposes the stolen gun enhancement.

II.     *History and Characteristics of the Defendant*

The defendant's criminal history is extensive, resulting in a category VI criminal history. Westman's criminal conduct began with Second Degree Burglary and Theft when he was 14. (PSIR ¶ 34). When he was 17, he committed Aggravated First Degree Motor Vehicle Theft. The case was transferred from juvenile court to district court, and the defendant received a two-year deferred judgment. He violated the conditions of probation multiple times, ultimately resulting in 665 days in prison. (PSIR ¶ 36). At age 18, he committed Harassment. (PSIR ¶ 37). At age 19, he was convicted of Second Degree Assault: Heat of Passion, an offense that involved attacking the victim with a knife on the victim's hand and leg. Westman again violated probation multiple times, resulting in 18 months in prison. (PSIR ¶ 38).

In 2000, the defendant pled guilty to Escape from Fugitive Charges, for which he received 12 months' prison. He left the community corrections center on March 21, 1997

4

and was not arrested until three years' later, on June 28, 2000. (PSIR ¶ 40). In 2003, the defendant pled guilty to Theft/Receiving: $500-$15,000, for which he received 6 years' prison. (PSIR ¶ 42). In 2004, the defendant pled guilty to Criminal Impersonation: Cause Liability, and in 2005, the defendant pled guilty to Forgery: Check/Commercial Instrument. (PSIR ¶¶ 43-44). Then, in 2005, the defendant again escaped, this time from a residential re-entry center. (PSIR ¶ 45). In 2013 and 2015, Westman pled guilty to two separate felonies for possessing controlled substances and one misdemeanor for possessing controlled substances. All three crimes involved heroin. (PSIR ¶¶ 46-48).

The defendant has essentially been in and out of custody since he was a juvenile. Even when given deferred judgments or probationary sentences, he repeatedly violated the conditions and ended up with revocations. He has a total of 9 separate felony convictions. His criminal history score is 23, even though only 13 points are necessary to reach a category VI. Even taking into consideration the defendant's decision to return the firearms to E.J.P., a 63-month sentence is warranted to address the fact that the defendant took these guns from Greenbaum despite having an extensive criminal history that precluded him from possessing firearms.

   III.    Other 18 U.S.C. § 3553(a) Factors

A 63-month sentence would punish the defendant for his conduct in this offense and, perhaps, deter future criminal activity, given that such a sentence would be far longer than anything the defendant has previously served. With respect to rehabilitation and treatment, the government agrees with Probation that the defendant would benefit from

substance abuse treatment during a period of supervision following incarceration.

Respectfully submitted this 1st day of August, 2016.

>JOHN F. WALSH
>UNITED STATES ATTORNEY
>
>By: s/ Rebecca S. Weber
>REBECCA S. WEBER
>Assistant U.S. Attorney
>U.S. Attorney's Office
>1225 17th St., Suite 700
>Denver, CO   80202
>Telephone:   (303) 454-0100
>Fax:   (303) 454-0403
>E-mail: Rebecca.Weber@usdoj.gov
>Attorney for Government

## CERTIFICATE OF SERVICE

     I hereby certify that on August 1, 2016, I electronically filed the foregoing **GOVERNMENT'S SENTENCING STATEMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Edward Harris
Edward_Harris@fd.org

                              By: s/ Rebecca S. Weber
                              REBECCA S. WEBER
                              Assistant U.S. Attorney
                              U.S. Attorney's Office
                              1225 17th St., Suite 700
                              Denver, CO   80202
                              Telephone:   (303) 454-0100
                              Fax:   (303) 454-0403
                              E-mail: Rebecca.Weber@usdoj.gov
                              Attorney for Government